Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| RENÉ FLORES ACUÑA<br><br>Parte Recurrida<br><br>v.<br><br>VIVA TRAVEL LLC<br><br>Parte Recurrente<br><br>**COMPAÑÍA DE TURISMO**<br><br>Agencia Recurrida | TA2025RA00295 | *Revisión Decisión Administrativa procedente de la Compañía de Turismo*<br><br>Caso núm.: QAV2024-013<br><br>Sobre:<br>Querella de agencia de viajes |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

Robles Adorno, Juez Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 24 de febrero de 2026.

El 20 de octubre de 2025, Viva Travel LLC (en adelante, la parte recurrente) presentó ante nos un *Recurso de Revisión Judicial* en el que solicitó que revoquemos la *Resolución* emitida el 23 de mayo de 2025, notificada el 28 de mayo de 2025, por la Oficina de Servicios y Fiscalización Turística adscrita a la Compañía de Turismo (en adelante la Compañía de Turismo).[1]

En el aludido dictamen, la Compañía de Turismo resolvió que, la parte recurrente le ocasionó daños emocionales al señor René Flores Acuña (el señor Flores Acuña o el recurrido) y a su esposa la señora Daneris Fernández Gerena (la señora Fernández Gerena o cónyuge) tras no acreditarle el dinero pagado para un viaje que fue cancelado. Además, la Compañía de Turismo determinó que, la parte recurrente debía reembolsarle una cuantía de $14, 619.50 relacionada a los gastos que el recurrido incurrió en un viaje, el cual no pudo completar en su totalidad tras arrojar positivo a COVID.

---

[1] Apéndice del Recurso de Revisión Judicial, Anejo I.

Por los fundamentos que expondremos a continuación, resolvemos confirmar en parte y, revocar en parte, la *Resolución* recurrida.

**I.**

El caso de autos tiene su origen cuando el 14 de diciembre de 2023, el señor Flores Acuña instó una *Querella* ante la Compañía de Turismo en la que alegó que, compró junto con su cónyuge, un paquete promocionado por la parte recurrente para viajar a los países de España, Turquía y Grecia por el costo de $39,999.00 para el verano de 2022.[2] El viaje incluía varios vuelos y un crucero a través de los países mencionados. Así las cosas, llegada la fecha del viaje, el recurrido arguyó que, este y su cónyuge abordaron un vuelo a España para iniciar su viaje. Empero, una vez llegaron a Atenas, adujo que, comenzó a sentir síntomas asociados al COVID y tras realizarse una prueba, tanto su cónyuge y este, ambos arrojaron positivo. El recurrido sostuvo que, se comunicó con una empleada de la parte recurrente y esta le recomendó que abordaran el crucero y le notificara al personal del crucero sobre el resultado de la prueba. Indicó que, al llegar al crucero, un médico le realizó otra prueba de COVID y arrojó positivo. Ante este cuadro, el personal de la embarcación no le permitió abordar y le remitió una misiva esbozando las razones para ello. Así pues, el recurrido inició los trámites relacionados a solicitar un crédito tras no poder abordar el crucero. Sin embargo, la compañía de la embarcación le informó que el crédito había sido cancelado por la parte recurrente dado que habían cobrado ese gasto y, por tanto, no procedía el reembolso. Consecuentemente, solicitó que la parte recurrente le devolviese la cuantía de $24, 619.50 que no fue utilizado puesto que contrajo la enfermedad de COVID.

---

[2] *Íd.*, Anejo VI.

Posteriormente, la parte recurrida radicó su respuesta a la *Querella* en la que negó las alegaciones formuladas por el recurrido y anejó varios documentos refutando dichas alegaciones.[3]

El 21 de mayo de 2024, fue celebrada una Conferencia Inicial en la que las partes comparecieron.[4] Con ello, el 31 de mayo de 2024, la Compañía de Turismo emitió una *Orden* en la que le ordenó a las partes que informaran la prueba documental, testigos y fechas disponibles para la celebración de la vista en su fondo.[5]

Luego de diversos trámites procesales, el 7 de julio de 2024, la parte recurrente instó una *Solicitud de desestimación* en la que argumentó que, el recurrido le cedió su habitación del crucero a otra pareja y, por tanto, su cabina sí se utilizó y no procedía el desembolso reclamado.[6] Ante ello, la parte recurrente adujo que, no procedía el crédito solicitado por el recurrido en virtud de que la habitación del crucero fue usada. Por otro lado, sostuvo que, la causa de acción estaba prescrita tras no haberse presentado dentro del año establecido en el Art. 45 (a)(3) del *Reglamento Aplicable a los agentes de viajes y mayoristas de viajes y excursiones y sus procedimientos aplicables*, Reglamento Núm. 8759 del 2016 (Reglamento Núm. 8759).

En respuesta, el 9 de agosto de 2024, el señor Flores Acuña radicó una *Moción en oposición a solicitud de desestimación* en la que reclamó que, pese a que le cedieron la habitación a una pareja que participaba en la excursión, la compañía le proveyó un certificado que podía emplear dentro de veinte cuatro (24) meses como crédito.[7] En esa línea, alegó que, la compañía de crucero le informó que la parte recurrente había cancelado el crédito brindado por dicha corporación. En otros términos, ripostó que la causa de acción fue

---

[3] *Íd.*, Anejo VII.
[4] *Íd.*, Anejo I, pág. 1.
[5] *Íd.*, Anejo I, pág. 1.
[6] *Íd.*, Anejo IX.
[7] *Íd.*, Anejo X.

presentada dentro del término del año tras advenir en conocimiento el 5 de octubre de 2023, sobre el crédito cancelado por la parte recurrente. Consecuentemente, no procedía la desestimación de la causa de acción.

Así las cosas, tras varias recalendarizaciones para la vista, el 25 de febrero de 2025 inició la celebración de la vista en su fondo en la que la Compañía de Turismo determinó que atendería la moción de desestimación una vez culminada la vista.[8] Durante la vista, la cónyuge del recurrido testificó que, se pagó el monto de $41,547.93 por la excursión organizada por la parte recurrente.[9] Una vez llegaron a Atenas[10] la cónyuge del recurrido comenzó a sentir malestar y síntomas asociados al COVID.[11] Ante ello, se realizó una prueba de COVID la cual arrojó positivo, al igual que el recurrido.[12] La señora Fernández Gerena alegó que, no recibió asistencia médica ni medicamento, pese a que ambos tenían un seguro provisto por la compañía Chubb.[13] No obstante, acudieron al crucero en la que la compañía del crucero, Ponant, le entregó una carta negándoles la entrada tras arrojar positivo a COVID.[14] Por otro lado, la señora Fernández Gerena sostuvo que, una persona del grupo de viajes le solicitó si podía cederle el cuarto y esta le indicó que, desconocía si podía cederle la habitación, pero no tenía reparo.[15] Así pues, la señora Fernández Gerena le escribió a la parte recurrente que cedía su cabina.[16] Empero, la señora Fernández Gerena informó que, la parte recurrente no los asistió a conseguir pasajes de vuelta a Puerto Rico.[17]

---

[8] *Íd.*, Anejo I.
[9] Transcripción de la prueba oral (TPO) de vista en su fondo del 25 de febrero de 2025, pág. 24; líneas 5-7.
[10] TPO, pág. 22; líneas 10-11.
[11] *Íd.*, pág. 24; líneas 14-16.
[12] *Íd.*, pág. 24; líneas 18-21; *Íd.*, pág. 25; líneas 20-24.
[13] *Íd.*, pág. 28; líneas 11-16.
[14] *Íd.*, pág. 32; líneas 7-8; líneas 16-19.
[15] *Íd.*, pág. 54; líneas 16-20; *Íd.*, pág. 56; líneas 5-7.
[16] *Íd.*, pág. 108; líneas 3-7.
[17] *Íd.*, pág. 23; líneas 19-21.

Tras llegar a Puerto Rico, el recurrido y la señora Fernández Gerena iniciaron los trámites relacionados a solicitar el cobro del seguro.[18] La señora Fernández Gerena indicó que, se comunicó con la compañía de la tarjeta de crédito que utilizaron para pagar el viaje para detener el pago por los servicios no prestados con relación a la parte recurrida.[19] La cónyuge se comunicó con un empleado de la parte recurrente en la que esbozó las partidas de los reclamos.[20] La cónyuge logró contactar a una empleada de la parte recurrente la cual le informó que había conseguido un crédito pero esta le riposta que no quería un crédito dado que no tenía la intención de volver a viajar.[21] Así pues, recibió un certificado de parte de la compañía de crucero, Ponant, valorado por un monto de $14, 619.50.[22] Empero, la compañía de crucero le informó al señor Flores Acuña que el crédito fue cancelado tras estar en disputa concederle el crédito tras la parte recurrente comunicarse con Ponant.[23] Consecuentemente, el recurrido continuó reclamando a la parte recurrente lo relacionado a la cancelación del crédito.[24]

Durante la vista, el recurrido adujo que, ante la falta de respuesta de la parte recurrente, en el 2023, inicia a planificar un viaje con tal de utilizar el crédito concedido por la compañía de crucero.[25] Sin embargo, el recurrido alegó que, la compañía de crucero le indicó que, debía contactar a la parte recurrente debido a que el crédito fue cancelado.[26] Con ello, el señor Flores Acuña se comunicó con la parte recurrente y esta le informó que su crédito fue cancelado tras cederle la cabina a otras personas que participaron en la excursión.[27] Así, el señor Flores Acuña alegó que,

---

[18] *Íd.*, pág. 39; líneas 9-12.
[19] *Íd.*, pág. 40; líneas 18-20; *Íd.*, pág. 65; líneas 11-14.
[20] *Íd.*, pág. 42; líneas 16-19.
[21] *Íd.*, pág. 45; líneas 20-24; *Íd.*, pág. 46; líneas 1-9.
[22] *Íd.*, pág. 57; líneas 5-12.
[23] *Íd.*, pág. 59; líneas 9-14.
[24] *Íd.*, pág. 68; líneas 1-7.
[25] *Íd.*, pág. 84; líneas 4-9.
[26] *Íd.*, pág. 89; líneas 3-9.
[27] *Íd.*, pág. 91; líneas 20-24; *Íd.*, pág. 92; líneas 1-5.

acudió a la Compañía de Turismo para iniciar el reclamo de dinero con relación al reembolso de dinero sobre las excursiones y crucero que no pudieron abordar.[28]

No obstante, la parte recurrente arguyó que, el crédito fue cancelado ante las reclamaciones que llevo a cabo el recurrido y la señora Fernández Gerena.[29] La parte recurrente se comunicó con la aseguradora del recurrido tras advenir en conocimiento sobre la reclamación que entabló con su tarjeta de crédito.[30] En esa línea, la parte recurrente admitió que se le devolvió la cuantía completa a los clientes afectados por el COVID, que no pudieron abordar el crucero de Grecia.[31] También, afirmó que, le informó a la aseguradora de viajes del recurrido, Chubb, y a la compañía de la tarjeta de crédito, American Express, que el recurrido tenía un crédito con la compañía de crucero.[32]

Así las cosas, el 23 de mayo de 2025, notificada el 28 de mayo de 2025, la Compañía de Turismo emitió una *Resolución*[33] en la que formuló las siguientes determinaciones de hechos:

> 1. La Sra. Fernández es la cónyuge del Querellante, Sr. Flores.
> 2. La Querellada es un Agente de Viajes según establecido en el Reglamento 8759 del 25 de mayo del 2016.
> 3. La Sra. Fernández testificó que en una ocasión anterior había utilizado los servicios de
> 4. la Querellada. Durante el verano del 2022, el matrimonio compuesto por el Sr. René A. Flores Acuña y la Sra. Daneris Fernández compró un paquete de excursión mediante la agencia de viaje Viva Travel; y la dueña de la misma, la Sra. Giselle Vassallo.
> 5. Dicho paquete de viaje se definió como Dosis C Deluxe Suite, y comenzaria el 8 de julio del 2022 y culminaria el 29 de julio del 2022, e incluía visitar los paises de Turquía, Grecia y España.
> 6. El costo total del viaje para una sola persona era de $19,999.00.
> 7. El matrimonio Flores-Fernández pagó un total de $39,998.00.

---

[28] *Íd.*, pág. 93; líneas 2-6.
[29] *Íd.*, pág. 124; líneas 22-24; *Íd.*, pág. 125; líneas 2-5.
[30] *Íd.*, pág. 130; líneas 21-24; *Íd.*, pág. 131; líneas 1-4.
[31] *Íd.*, pág. 131; líneas 20-24.
[32] *Íd.*, pág. 133; líneas 13-16.
[33] Apéndice del *Recurso de Revisión Judicial*, Anejo 1.

8. El paquete de viaje incluía entre otros un crucero a bordo del yate "Les Jacques Cartier" perteneciente a la compañía conocida como Ponant, para una travesía por las Islas Griegas. Dicho yate saldría el 19 de julio del 2022.

9. Según surge de la factura del 1 de marzo de 2022, que fuera sometida por la parte Querellante, "The deposit as wellas the final payment are not refundable or transferable. Viva Travel is not responsible for accidents, losses of any kind, damage to person, property, or thing."

10. El 30 de junio de 2022 se celebró una reunión con los participantes del viaje y donde además hubo una orientación sobre seguro de viajes por parte de un representante de CHUBB.

11. La parte Querellante obtuvo un seguro de viaje con CHUBB insurance, por interrupción de viaje, entre otras partidas.

12. El matrimonio participó de los servicios brindados en Turquía (Estambul y Capadoccia) y en Atenas.

13. El crucero se abordaría el 19 de julio de 2022 en Atenas, para recorrer las Islas Griegas y terminaría de regreso a Atenas el 26 de julio del 2022.

14. El 19 de julio de 2022 tripulantes de Ponant realizan pruebas de Covid 19 a los que abordarían el crucero.

15. Al Querellante y su esposa no se les permitió abordar el crucero por arrojar positivo a Covid 19.

16. Ese mismo día, dado el diagnóstico de Covid-19 la parte Querellante cedió su cabina del crucero a otros participantes del viaje mediante comunicación por mensaje de texto con la parte Querellada.

17. Un total de 11 pasajeros del grupo no pudieron abordar el yate por arrojar positivo a Covid-19.

18. El matrimonio Flores Sanchez tuvo que permanecer en Atenas hasta que pudieron regresar a Puerto Rico, y no pudieron disfrutar del crucero ni de las actividades posteriores incluidas en el paquete, especificamente la parte correspondiente a España.

19. El resto de los pasajeros del viaje pudieron abordar el Ponant y terminar el viaje según programado.

20. El 29 de julio de 2022 la Sra. Fernández sometió reclamación a CHUBB, con quien había obtenido su seguro de viaje. Ademas, la parte Querellante sometió una reclamación a American Express, tarjeta de crédito de la parte demandante, por servicios no recibidos.

21. El matrimonio reclamó a CHUBB y a American Express, de forma individual e independiente, la suma de $47,612.00. Con respecto a CHUBB la reclamación se realizó por interrupción de viaje. Con respecto a la reclamación de American Express, la reclamación se debió a servicios no prestados o parcialmente prestados.

22. La parte Querellada a través de la Sra. Vasallo fue inquirida por Chubb, American Express y Ponant sobre los reclamos realizados por la parte Querellada, y ésta contestó sus requerimientos.

23. El matrimonio Flores Femández logró recobrar varios de los gastos mediante la reclamación realizada a CHUBB Insurance, y no así la partida correspondiente al crucero, dado que Viva Travel, había notificado que

no procedía la reclamación de la partida delyate, pues la querellada había conseguido un crédito.

24. Con respecto a la reclamación realizada a la American Express, la parte querellante no recibió devolución de dinero alguna, toda vez que la parte Querellada le brindó a dicha compañía evidencia y confirmación de los diferentes hoteles y excursiones que la parte Querellante disfrutó.

25. La Sra. Vasallo, por la relación de negocios que tenía con Ponant y por la situación novel del Covid hizo gestiones para que Ponant ofreciera a los pasajeros algún tipo de crédito y obtuvo que la compañía emitiera un crédito directo a los pasajeros que no pudieron abordar, por el 100% del valor pagado.

26. La parte Querellante no le solicitó a la parte Querellada que se le gestionara dicho crédito, toda vez que interesaba recuperar el dinero en efectivo.

27. La parte querellante nunca fue informada, previo a emiitr el primer pago del paquete de viaje, que en caso de interrupción de viaje, se le impondría un crédito por cancelación en cuanto a Ponant. Viva Travel no notificó las politicas de cancelación ylo reembolsos según es requerido por el "Reglamento de los Agentes y Mayoristas de Viajes y Excursiones", Reglamento Núm. 8759 del 25 de mayo del 2016.

28. Mediante correo electrónico enviado el 2 de septiembre del 2022 a la Sra. Daneris Fernandez, la parte Querellada le indicó que a pesar de que le habian cedido su cabina en el Ponant a otra familia perteneciente al grupo de viaje, se le habia conseguido un crédito de $14,619.50 que podía utilizarse dentro de los próximos veinticuatro (24) meses contados a partir de la fecha de salida del yate Ponant.

29. El mencionado certificado establece: "Certificate has no cash value and is nontransferrable. Future Cruise Credit, once redeemed for a future cruise, the new booking is non-refundable."

30. El 14 de septiembre de 2022, la Sra. Fernández informó a la Querellada que se abstuviese de hacer gestiones no autorizadas por ellos. Específicamente manifestaron que no estaban interesados en el crédito, que el crédito otorgado conllevaría gastos adicionales de viaje, e informaron que no les interesaba el crédito de Ponant.

31. El 15 de septiembre de 2022, la Sra. Vassallo le dejó saber a la Sra. Fernández que el crédito podía utilizarse para viajar a cualquier destino en cualquiera de las flotas de Ponant, además le recordó que ella había cedido su cabina y que aún así le dieron el crédito. De este mismo correo surge el recordatorio de que el certificado "has no cash value and is non-refundable".

32. El 24 de septiembre de 2022, la Sra. Fernández le solicita vía correo electrónico a la Querellada que no realizara gestiones en su nombre; que ellos no solicitaron crédito a Ponant, que ellos no la autorizaron hacerlo y le informó que no querían volver a saber de su compañía.

33. La parte querellada le envió dicha comunicación a Ponant.

34. El 15 de noviembre de 2022, CHUBB le notificó al Querellante que la cantidad pagársele sería por $6,596.83, desglosando las partidas a pagarse.

35. CHUBB pagó parte de la suma reclamada.

36. La parte Querellante no cuestionó la decisión de CHUBB.

37. A pesar de que el crédito a Ponant no era "cash value" y a pesar de que desautorizaron a la Querellada de cualquier gestión con Ponant, el 12 de abril de 2023, el Querellante informó a Ponant que "after discussing for long time our situation with Viva Travel (Our travel agency) they manage to get a credit from Ponant. The problem is we cannot use the credit...we would like to receive our money back as per the policy you sent me."

38. Luego de varias comunicaciones con Ponant, dicha compañía informó que todo tipo de reclamación tendría que ser a través de Viva Travel, parte Querellada, dado a que las gestiones de reservar el viaje, como la obtención del crédito fueron gestionadas por ella. Viva Travel fue copiada en dicha comunicación.

39. A pesar de los intentos por parte de la parte Querellante de, en ese entonces, comunicarse con la parte Querellada, no se pudo obtener respuesta.

40. Así las cosas, y dado que hasta ese momento la parte Querellante entendía que existía un crédito con la compañía Ponant, los querellantes decidieron utilizar el crédito que les había indicado la Sra. Vassallo, en aras de no perder todo lo invertido en el pago del crucero.

41. Así las cosas, el 26 septiembre del 2023, el Sr. Flores se comunicó con la compañía de crucero para reservar un barco que entendieron por la fecha y el precio lo podían hacer.

42. El 3 de octubre del 2023, PONANT les notificó que la reservación estaba completada.

43. No obstante, el 5 de octubre del mismo año, mediante correo electrónico, la compañía de cruceros PONANT les informó que el crédito gestionado por la Sra. Vassallo había sido cancelado.

44. Ponant indicó que habían sido informado por la parte Querellada de unas disputas que habían surgido referentes al viaje, por lo que nuevamente les indicaron que se comunicaran con Viva Travel. La Sra. Gisselle Vassallo nuevamente estuvo copiada en varios de los mensajes.

45. A pesar de innumerables intentos para comunicarse con Viva Travel y que los asistiera, según fue indicado por PONANT, la querellada no atendió al matrimonio Flores Fernández. Ello, a pesar de tener pleno conocimiento de la situación que estaban atravesando los querellantes.

46. Como resultado, la parte Querellante, no recibió el reembolso ni el crédito, y quedó desprovista de poder recuperar lo que le pagaron a Viva Travel para el crucero.

47. El 14 de diciembre de 2023 el Querellante presentó Querella contra Viva Travel indicando que hubo un incumplimiento ya que "no se devolvió el dinero de la porción del viaje no utilizado".

A tenor con lo anterior, el organismo administrativo determinó que, la parte recurrente no le proveyó a sus clientes una política de cancelación o reembolso. Aunque el recurrido entabló una reclamación con su aseguradora, la Compañía de Turismo razonó que, carece de jurisdicción para atender la cuantía concedida por Chubb. No obstante, el organismo administrativo resolvió que, la parte recurrente intervino en los reclamos del recurrido ante Chubb, por lo que afectó los remedios que pudo haber tenido derecho el señor Flores Acuña. Además, concluyó que la parte recurrente no fue diligente en atender los reclamos del recurrido y su cónyuge e intervino de forma perjudicial ante los procedimientos que estos tenían a su alcance para obtener una justa recompensa. Por otro lado, resaltó que, el señor Flores Acuña sufrió varias acciones u omisiones, siendo la última el 5 de octubre de 2025, cuando el recurrido adviene en conocimiento de que el crédito fue cancelado y, por tanto, presentó el 14 de diciembre de 2023, la *Querella* dentro del término prescriptivo. Por ende, la Compañía de Turismo ordenó que la parte recurrente le reembolsara al señor Flores Acuña la cuantía de $14, 619.50 y una compensación en concepto de daños y perjuicios por el monto de $10,000.00.

Insatisfecha, el 17 de junio de 2025, la parte recurrente radicó una *Reconsideración* en la que arguyó que, las determinaciones de hechos son incongruentes con la prueba desfilada ante la vista administrativa.[34] Además, adujo que, no intervino en las determinaciones de Chubb y la compañía de crucero, por lo que no se le debe imponer responsabilidad sobre ello.

En respuesta, el 22 de julio de 2025, el señor Flores Acuña instó una *Moción en oposición a solicitud de reconsideración* en la que sostuvo que, las determinaciones de hechos fueron respaldadas

---

[34] *Íd.*, Anejo II.

con prueba documental y oral.[35] En esa línea, sostuvo que, quedó evidenciado el patrón de interferencia indebida e incumplimiento contractual en que incurrió la parte recurrida y, por tanto, no procede su petitorio de reconsideración.

El 12 de septiembre de 2025, notificada el 19 de septiembre de 2025, la Compañía de Turismo remitió una Resolución de reconsideración en la que declaró No Ha Lugar la *Reconsideración*.[36]

Inconforme, el 20 de octubre de 2025, la parte recurrida comparece ante nos mediante un *Recurso de Revisión Judicial* en el que coligió los siguientes señalamientos de error:

> Primer error: Erró Turismo al emitir una Resolución Final incongruente con sus propias determinaciones de hechos.

> Segundo error: Erró Turismo al llegar a determinaciones de hechos no basadas en la prueba presentada en la Vista en su Fondo.

> Tercer error: Erró Turismo al denegar nuestra Solicitud de Desestimación.

En cumplimiento con nuestra *Resolución*, el 9 de febrero de 2026, el señor Flores Acuña presentó un *Alegato en oposición a recurso de Revisión*.

Con el beneficio de la comparecencia de las partes, procederemos a resolver el recurso ante nuestra consideración.

## II.

## A.

Los organismos administrativos merecen la mayor deferencia posible de los tribunales. *Otero* v. *Toyota*, 163 DPR 716, 727 (2005). Tal deferencia se apoya en que las agencias administrativas tienen conocimiento experto y la experiencia especializada de los asuntos que le son encomendados. *Otero* v. *Toyota, supra*, pág. 728. Un principio establecido es que las determinaciones de las agencias administrativas tienen una presunción de legalidad y corrección en

---

[35] *Íd.*, Anejo III.
[36] *Íd.*, Anejo IV.

la que no deben intervenir los tribunales. *Rebollo* v. *Yiyi Motors*, 161 DPR 69, 78 (2004). Las determinaciones de hecho de las agencias tienen a su favor una "presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas." *Henríquez v. Consejo Educación Superior*, 120 DPR 194, 210 (1987). Nuestro Tribunal Supremo ha expresado que los tribunales no deben intervenir o alterar las determinaciones de hechos de un organismo administrativo "si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad". *Otero Mercado v. Toyota de P.R. Corp.,* 163 DPR 716, 727-728 (2005); *Domingo v. Caguas Expressway Motors*, 148 DPR 387, 397 (1999). Las determinaciones de hecho serán sostenidas por el tribunal, si se basan en evidencia sustancial que no obra en el expediente administrativo. *Vázquez v. Consejo de Titulares*, 216 DPR ___ (2025), 2025 TSPR 56. Ejercitando un criterio de razonabilidad y deferencia, los tribunales no deben intervenir o alterar las determinaciones de hecho realizadas por una agencia si están sostenidas por evidencia sustancial que surge del expediente. *Otero* v. *Toyota, supra,* pág. 728. El máximo foro judicial ha definido evidencia sustancial como aquella "que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Otero* v. *Toyota, supra*, pág. 728; *Ramírez v. Depto. de Salud*, 147 DPR 901, 905 (1999). La parte que impugne una determinación de hecho de una agencia debe convencer al foro apelativo que la determinación no fue basada en evidencia sustancial. *Otero v. Toyota, supra*, pág. 728. Para rebatir la determinación que cuestiona, debe demostrar que existe otra evidencia en el expediente que reduzca el valor probatorio. *Otero* v. *Toyota, supra*, pág. 728. Si la parte no demuestra en la revisión judicial otra evidencia sustancial que

sostenga la determinación de la agencia, entonces no se alterará la determinación de la agencia. *Otero* v. *Toyota, supra,* pág. 728. La parte que alegue ausencia de evidencia sustancial debe demostrar que existe:

> "[O]tra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia, hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial [...] hasta el punto de que se demuestre claramente que la decisión [del organismo administrativo] no está justificada por una evaluación justa del peso de la prueba" que tuvo ante su consideración. *Metropolitan S.E. v. A.R.P.E.,* 138 DPR 200, 213 (1995) citando a *Hilton Hotels v. Junta de Salario Mínimo,* 74 DPR 670, 686 (1983).

El máximo foro judicial ha definido evidencia sustancial como aquella "que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Otero* v. *Toyota, supra,* pág. 728; *Ramírez v. Depto. de Salud,* 147 DPR 901, 905 (1999). La parte que impugne una determinación de hecho de una agencia debe convencer al foro apelativo que la determinación no fue basada en evidencia sustancial. *Otero v. Toyota, supra,* pág. 728. Para rebatir la determinación que cuestiona, debe demostrar que existe otra evidencia en el expediente que reduzca el valor probatorio. *Otero* v. *Toyota, supra,* pág. 728. Si la parte no demuestra en la revisión judicial otra evidencia sustancial que sostenga la determinación de la agencia, entonces no se alterará la determinación de la agencia. *Otero* v. *Toyota, supra,* pág. 728.

Por otro lado, respecto a las conclusiones de derecho, la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico,* Ley Núm. 38-2017, señala que éstas pueden ser revisadas en todos sus aspectos. Sec. 4.5 de la LPAU, 3 LPRA sec. 9675. Las conclusiones de derecho serán revisables en todos sus aspectos por un tribunal. *Vázquez v. Consejo de Titulares, supra.* La interpretación de la ley es una tarea que le corresponde a los tribunales y como corolario, los tribunales deben revisar las

conclusiones de derecho en todos sus aspectos. *Vázquez v. Consejo de Titulares, supra.* Ello, como mecanismo interpretativo del poder judicial. *Íd.* Ahora bien, lo anterior "no implica que los tribunales revisores tienen la libertad absoluta de descartar libremente las conclusiones e interpretaciones de la agencia". *Otero v. Toyota, supra*, pág. 729. Consecuentemente, cuando un tribunal llega a un resultado distinto al de la agencia, éste debe determinar si la divergencia es a consecuencia de un ejercicio razonable y fundamentado de la discreción administrativa, ya sea por la pericia, por consideraciones de política pública o en la apreciación de la prueba. *Íd.* Dicho de otro modo, "[e]l tribunal podrá sustituir el criterio de la agencia por el propio solo cuando no pueda hallar una base racional para explicar la decisión administrativa". *Íd.*

No obstante, la deferencia reconocida a la decisión de una agencia administrativa cede en las siguientes circunstancias: (1) la determinación administrativa no esté basada en evidencia sustancial; (2) el organismo administrativo haya errado en la aplicación o interpretación de las leyes o los reglamentos que se le ha encomendado administrar; (3) cuando el organismo administrativo actúe arbitraria, irrazonable o ilegalmente, al realizar determinaciones carentes de una base racional; o, (4) cuando la actuación administrativa lesione derechos constitucionales fundamentales. *Super Asphalt v. AFI y otros,* 206 DPR 803, 819 (2021); *Torres Rivera v. Policía de Puerto Rico,* 196 DPR 606, 628 (2016); *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 744-745 (2012). Si el tribunal no se encuentra ante alguna de estas situaciones, aunque exista más de una interpretación razonable de los hechos, debe sostener la que seleccionó la agencia encargada. *Otero* v. *Toyota,* 163 DPR 716, 730 (2005). Al ejercer la función revisora, el tribunal está obligado a considerar la especialización y experiencia de la agencia sobre las cuestiones que

tuvo ante sí. *Rebollo* v. *Yiyi Motors*, 161 DPR 69, 78 (2004). Por otro lado, las determinaciones de derecho, el tribunal tiene amplia autonomía para revisarlas en todos sus aspectos. *Rebollo* v. *Yiyi Motors*, *supra*, pág. 77.

**B.**

El Art. 1063 del Código Civil, 31 LPRA sec. 8984, establece que una de las fuentes de las obligaciones son los contratos. Con ello, el Art. 1230 del Código Civil, 31 LPRA sec. 9751, define a un contrato "como el negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones". Así pues, lo acordado en los contratos tiene fuerza de ley entre las partes, sus sucesores y los terceros en la forma en que dispone la ley. Art. 1233 del Código Civil, *supra* sec. 9754. Para que un contrato quede perfeccionado deben concurrir los siguientes elementos: consentimiento de los contratantes, objeto y causa. *Oriental Bank v. Perapi*, 192 DPR 7, 15 (2014). Los contratos se rigen por la autonomía de la voluntad de las partes en el que estas pueden establecer pactos, cláusulas y condiciones que estimen conveniente, siempre que no sean contrarias a la ley, moral y orden público. *Oriental Bank v. Perapi, supra.* Otro principio que rige las obligaciones es el principio *pacta sunt servanda* la cual establece que las obligaciones nacen de los contratos que tienen fuerza de ley entre las partes y deben cumplirse a tenor con los mismos. *PRFS v. Promoexport*, 187 DPR 42, 52 (2012). Asimismo, los contratos se fundan a base de la autonomía de la voluntad y libertad que tienen las partes contratantes en las que establecen los pactos, cláusulas y condiciones que tengan por convenientes. *BPPR v. Sunc. Talavera*, 174 DPR 686, 694 (2008).

En lo pertinente a la controversia ante nos, el Art. 7 (c) del Reglamento Núm. 8759 dispone que,

Cuando el agente de viaje prepare un viaje individual o integral (package) deberá confeccionar y poner a la disposición del viajero el proyecto en forma escrita y detallada, incluyendo lo siguiente:

1. Itinerario.

2. Los pagos parciales y totales que habrá de realizar el cliente.

3. Los sitios a visitarse en cada lugar.

4. Las comidas incluidas.

5. Los hoteles o categorías de hoteles en los cuales se alojará el cliente.

6. Orientación general sobre la documentación requerida por las autoridades del país que va a visitar, o indicar dónde puede conseguir dicha información.

**7. Política de cancelación.**

**8. Cualquier otra información pertinente.**

(Énfasis nuestro).

Asimismo, el Art. 7 (e) del citado reglamento, ordena que, en caso de que una agencia de viajes incumpla con su deber de prestar el servicio contratado con el cliente, deberá devolver el dinero del servicio no prestado. Además, las agencias de viajes tienen el deber de responder a sus clientes. Art. 7 (g) del Reglamento Núm. 8759.

## C.

Una de las fuentes de las obligaciones surge cuando los actos y las omisiones en los que intervenga cualquier género de culpa o negligencia, está obligado a reparar el daño causado. Código Civil de Puerto Rico, 31 LPRA sec. 5141. El Art. 1536 del Código Civil de Puerto Rico, *supra* sec. 10801, establece que la persona que por culpa o negligencia causa daño a otra, viene obligada a repararlo. La culpa o negligencia consiste en "la falta de debido cuidado, que a la vez consiste en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias". *López v. Porrata Doria,* 169 DPR 135, 151 (2006); *Toro Aponte v. ELA,* 142 DPR 464, 473 (1997). Para que prospere una acción de daños y perjuicios, el reclamante debe establecer: (1) la existencia de un daño real; (2) el nexo causal entre el daño y la acción u omisión del demandado, y (3) el acto u omisión cual tiene que ser culposo o negligente. *Cruz*

*Flores et al. v. Hosp. Ryder et al.*, 210 DPR 465 (2022); *Pérez Hernández v. Lares Medical Center, Inc.*, 207 DPR 965, 976 (2021); *López v. Porrata Doria, supra*, pág. 150 (2006). La culpa o negligencia consiste en la falta del debido cuidado, que a la vez consiste en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias. *Mena Pamias v. Jiménez Meléndez*, 212 DPR 758, 768 (2023). Véase, además, *Pérez Hernández v. Lares Medical Center, Inc., supra*, págs. 976–977; *López v. Porrata Doria, supra*, pág. 151; *Toro Aponte v. ELA*, 142 DPR 464, 473 (1997). Ahora bien, entre el acto culposo y el daño sufrido debe existir un nexo causal adecuado. *Pérez Hernández v. Lares Medical Center, Inc., supra*, pág. 977. El nexo causal adecuado no es "causa de toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce, según la experiencia general". *Pérez Hernández v. Lares Medical Center, Inc., supra*, págs. 976-977.

En atención a la controversia ante nos conviene destacar los daños continuos. Los daños continuados han sido definidos como "producidos por uno o más actos culposos o negligentes imputables al actor, coetáneos o no, que resultan en consecuencias lesivas ininterrumpidas, sostenidas, duraderas sin interrupción, unidas entre sí, las cuales al ser conocidas hacen que también se conozca —por ser previsible— el carácter continuado e ininterrumpido de sus efectos, convirtiéndose en ese momento en un daño cierto compuesto por elementos de un daño actual (aquel que ya ha acaecido), y de daño futuro previsible y por tanto cierto". *Rivera Prudencio v. Mun. de San Juan*, 170 DPR 149, 167 (2007). Estos se caracterizan por ser producidos por uno o más actos culposos o negligentes imputables al actor, simultáneos o no, que resultan en consecuencias lesivas ininterrumpidas, sostenidas y duraderas. *Rivera Prudencio v. Municipio de San Juan*, 170 D.P.R. 149 (2007).

**Por su naturaleza, el término prescriptivo para reclamar este tipo de daño comienza a correr cuando se verifique el último de los actos o se produzca el resultado definitivo**. *Íd.*

En lo que respecta, el Art. 60 el Reglamento Núm. 8759 estatuye que,

> a. Cuando la Compañía, luego de celebrada una audiencia, determinare que cualquier acto realizado u omitido, o práctica puesta en vigor ha infringido cualquier orden, fuere injusta o irrazonable, estableciere diferencias o preferencias injustificadas o indebidas, podrá ordenar al concesionario que pague al perjudicado, dentro del tiempo razonable que se especifique, el importe de los daños y perjuicios sufridos como resultado del acto, omisión o práctica injusta, irrazonable o ilegal. La orden que a ese efecto se expida contendrá las determinaciones de hechos, si se hubiere renunciado, conclusiones de derecho y la cuantía que ha de pagarse. No obstante, a lo antes expuesto, no se otorgará indemnización alguna por la Compañía, a menos que la querella o petición se hubiere presentado ante ella, dentro de un (1) años contados desde la fecha en que surgió la causa de acción.

Cónsono con ello, un panel hermano interpretó las disposiciones estatutarias que rigen la Compañía de Turismo. Así pues, este Tribunal de Apelaciones razonó que, el organismo administrativo está facultado para conceder indemnizaciones en concepto de daños y perjuicios de configurarse los elementos jurisprudenciales de daños. *Fuster Rodríguez v. DY Travel Services*, KLRA201500283. Ahora bien, los tribunales apelativos no intervendremos con la valorización de daños que realiza el foro primario, salvo cuando la cuantía sea muy baja o alta. *Santiago Montañez v. Fresenius Medical*, 195 DPR 476, 490 (2016).

### D.

La prescripción es una figura que extingue un derecho debido a que una parte no lo ejerce en un período de tiempo determinado. Art. 1189 del Código Civil de 2020, 31 LPRA sec. 9481; *Rivera Ruiz v. Mun. De Ponce*, 196 DPR 410, 415 (2016); *Fraguada Bonilla v. Hosp. Aux. Mutuo*, 186 DPR 365, 372–373 (2012). El término para ejercer las acciones se puede interrumpir ejerciendo la acción ante

los tribunales, reclamación extrajudicial del acreedor y por cualquier reconocimiento de deuda por el deudor. *Rivera Ruiz v. Mun. De Ponce, supra*, pág. 415. El término prescriptivo dispuesto en el Art. 1190 del Código Civil de 2020, *supra* sec. 9482, establece que, el término prescriptivo comienza a transcurrir desde que el "legitimado activo conoce o debe conocer la existencia del derecho a reclamar y la identidad de la persona contra quien puede actuar." En lo pertinente, el Art. 45(a)(3) del Reglamento Núm. 8759, dispone que, la Compañía de Turismo podrá ordenar el archivo o desestimar una querella de haberse presentado luego del año en que surgió la causa de acción.

### III.

En el caso de autos, en su primer y segundo señalamiento de error, la parte recurrente alegó que, las determinaciones de hechos formuladas por la Compañía de Turismo no fueron basadas en la evidencia documental y oral que desfiló ante la Compañía de Turismo.

Por estar íntimamente relacionados el primer y segundo señalamiento de error, procederemos a discutirlos en conjunto. Particularmente, revisaremos las determinaciones de hechos en las que en el presente recurso la parte recurrente alegó que medió perjuicio por parte de la Compañía de Turismo.

Harto es conocido que, debemos brindarle deferencia a las determinaciones de hechos que esbozan las agencias administrativas. En reiteradas ocasiones, este Tribunal ha resuelto que no intervendremos en las determinaciones de hecho de una agencia, salvo que la determinación administrativa no está basada en evidencia sustancial; el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones

carentes de una base racional. De lo contrario, debemos abstenernos en modificar las determinaciones de hechos que formule la agencia toda vez que el foro administrativo evaluó la prueba desfilada ante su consideración. Veamos.

Como corolario de lo anterior, la Compañía de Turismo es el organismo administrativo encargado de velar que las agencias de viajes cumplan con los contratos que suscriban con sus clientes. Cónsono con ello, el organismo administrativo celebró una vista administrativa en aras de determinar si procedía el remedio solicitado por el señor Flores Acuña. A esos fines, surge de la transcripción de la prueba oral que, la cónyuge del señor Flores Acuña confrontó a la parte recurrente tras no acreditarle el dinero congruente a la porción del viaje que no pudo disfrutar. Además, la señora Fernández Gerena le ripostó a la parte recurrente que no deseaba un crédito dado que no tenía dinero para invertir en pasajes y, por tanto, deseaba la devolución del dinero reclamado.[37] Encima, luego de diversos intentos infructuosos en comunicarse con la parte recurrente, el recurrido y la señora Fernández Gerena decidieron utilizar el crédito.[38] No obstante, cuando el recurrido decide emplearlo, la compañía de crucero le informa que la parte recurrente canceló el crédito concedido por esta y toda reclamación debía entablarla con la parte recurrente.[39] Así pues, se desprende de la transcripción de la prueba oral que, la parte recurrente intervino en las reclamaciones del recurrido y su cónyuge, con la aseguradora Chubb y le informó a Ponant sobre ello.[40] A esos efectos, la parte recurrente admitió que canceló el crédito concedido por la compañía de crucero debido a que la señora Fernández Gerena le cedió su habitación a otra pareja y, por tanto, tras ser utilizada procedía la

---

[37] *Íd.*, pág. 45; líneas 20-24; *Íd.*, pág. 46; líneas 1-9.
[38] *Íd.*, pág. 84; líneas 4-9.
[39] *Íd.*, pág. 89; líneas 3-9.
[39] *Íd.*, pág. 91; líneas 20-24. *Íd.*, pág. 92; líneas 1-5
[40] *Íd.*, pág. 130; líneas 21-24 *Íd.*, pág. 131; líneas 1-4.

cancelación del crédito.[41] De igual forma, reiteró que mantuvo comunicación con la aseguradora y la compañía de crucero puesto que no procedía una "doble cancelación". En esa línea, admitió que a otras personas, que fueron contagiadas con el COVID, le devolvieron el dinero.

A la luz de lo esbozado, no estamos en posición de intervenir con las determinaciones de hechos coligadas por la agencia administrativa, toda vez que, se desprende palmariamente que fueron basadas según la evidencia que tuvo ante sí el organismo administrativo. Ciertamente, las determinaciones de hecho que impugna la parte recurrente, en el recurso ante nos, fueron formuladas conforme la prueba que tuvo ante sí la Compañía de Turismo. Tampoco, se configuraron las circunstancias delimitadas jurisprudencialmente que nos facultan a intervenir en las determinaciones de hechos coligadas por el organismo administrativo. Consecuentemente, no se cometió el primer y segundo señalamiento de error planteado por la parte recurrente.

Por otro lado, en su tercer señalamiento de error, la parte recurrente argumentó que la agencia administrativa erró en denegar la *Solicitud de desestimación* interpuesta por esta. En dicha solicitud, la parte recurrente adujo que, la Compañía de Turismo erró en ordenar a la parte recurrente en indemnizar, en concepto de daños y perjuicios, al señor Flores Acuña y su cónyuge. De igual forma, arguyó que, en el contrato suscrito entre ambas partes no consta una cláusula en la que ordene el desembolso de dinero.

Tal como esbozamos en nuestra segunda parte, para que prospere que una parte sea indemnizada en virtud del Art. 1536 del Código Civil, *supra*, deben concurrir los siguientes elementos: (1) la existencia de un daño real; (2) el nexo causal entre el daño y la acción u omisión del demandado, y (3) el acto u omisión cual tiene

---

[41] *Íd.*, pág. 124; líneas 22-24; *Íd.*, pág. 125; líneas 2-5.

que ser culposo o negligente. *Cruz Flores et al. v. Hosp. Ryder et al.*, *supra*; *Pérez Hernández v. Lares Medical Center, Inc.*, *supra*, pág. 976; *López v. Porrata Doria, supra*, pág. 150. Ante ello, la Compañía de Turismo está facultada para conceder partidas económicas en concepto de daños a una persona agraviada por una agencia o representante de viajes. Ahora bien, el Art. 45 (a)(3) del Reglamento Núm. 8759, *supra*, dispone que una parte tiene un término prescriptivo de un (1) año para entablar una querella en la agencia desde que adviene en conocimiento del alegado daño.

En otros términos, una de las fuentes de las obligaciones son los contratos. Para que un contrato tenga fuerza de ley y sea perfeccionado entre las partes deben constar los siguientes requisitos: consentimiento, objeto y causa. De lo contrario, estaríamos ante un contrato que no tiene carácter obligatorio entre las partes. Con relación a lo que nos atine, el Art. 7(c) del Reglamento Núm. 8759, *supra*, mandata que en un contrato de una agencia de viaje o representante de viaje deben constar las políticas de cancelación. Ahora bien, cuando una agencia de viajes no cumpla con prestar el servicio pagado por el cliente, esta se encuentra en la obligación de devolver el monto pagado por el servicio no prestado. Art. 7 (e) del Reglamento Núm. 8759, *supra*.

Luego de un análisis detallado del expediente ante nos y en correcta práctica apelativa procederemos a revisar las conclusiones de derecho consignadas por la Compañía de Turismo.

Si bien es cierto que, en el contrato suscrito entre, la parte recurrente y el señor Flores Acuña, constaba una cláusula que disponía que el dinero no era reembolsable, dicho contrato no contemplaba cláusulas relacionados a una política de cancelación cuando ocurrieran eventos de fuerza mayor o caso fortuito. Es decir, no surge del contrato, alguna política de cancelación relacionada a cuando ocurra un evento de fuerza mayor o imprevisto, tal como los

hechos de este caso, durante el transcurso de un viaje organizado por la parte recurrente. Encima, el Art. 7 (e) ordena a una agencia de viajes a devolver el dinero pagado por un cliente en caso de un servicio no prestado. A esos fines, el recurrido pagó una cuantía de un viaje que no pudo disfrutar a causa de contagiarse con COVID por lo que nos resulta oneroso que, la parte recurrente no cumpla en querer devolver el monto pagado por este en los servicios que no pudo disfrutar. Por tanto, en aras de no dejar desprovisto al recurrido ante la ambigüedad de las políticas de cancelación contractual y ejercer correctamente nuestra función judicial, esta Curia resuelve que, la Compañía de Turismo no erró en ordenar la devolución del monto de $14, 619.50.

Por otro lado, de configurarse los elementos jurisprudenciales y estatutarios en una causa de acción de daños y perjuicios, la parte promovente debe ser debidamente indemnizada. Cónsono con lo anterior, el Art. 60 del Reglamento Núm. 8750, *supra*, faculta a la Compañía de Turismo a indemnizar a un agraviado en concepto de daños y perjuicios. Ahora bien, este Tribunal de Apelaciones está facultado en intervenir y revisar las partidas concedidas en una acción de daños y perjuicios cuando la cuantía concedida sea muy baja o alta. *Santiago Montañez v. Fresenius Medical, supra*, pág. 490. Como vemos, la Compañía de Turismo ordenó que la parte recurrente pagara la suma de $10,000.00 por los daños sufridos por el recurrido y la señora Fernández Gerena. Ciertamente, el señor Flores Acuña y la señora Fernández Gerena confrontaron diversas dificultades con tal de lograr obtener un reembolso y remedio ante la falta de transparencia de la parte recurrente. Ahora bien, la Compañía de Turismo no detalló que jurisprudencia o dictámenes utilizó como punto de referencia para la estimación de la valorización de daños y el cómputo para establecer la cuantía concedida al amparo de la normativa pronunciada en *Santiago*

*Montañez v. Fresenius Medical, supra.* De esta forma, esta Curia concluye que el organismo administrativo incumplió con la normativa que dispone el caso de *Santiago Montañez v. Fresenius Medical, supra.* Ello, toda vez que, la Compañía de Turismo no particularizó la partida concedida y los fundamentos por los cuales procedía el monto de $10,000.00 en concepto de daños y perjuicios. La valorización de daños es una tarea en la que debe se debe detallar los dictámenes en los que el juzgador fundamentó su determinación y debe ser congruente con la prueba que tuvo ante sí. Conforme con los principios contemplados, debemos revocar la *Resolución* recurrida a los fines de que la Compañía de Turismo acredite el cumplimiento de la doctrina particularizando las partidas concedidas con la jurisprudencia que las sostenga.

Destacamos que, el señor Flores Acuña presentó la *Querella* dentro del término prescriptivo de un (1) año y, por tanto, cumplió con el término prescriptivo establecido estatutariamente.

A la luz de los fundamentos esbozados, confirmamos en parte, la *Resolución* recurrida en virtud de que la Compañía de Turismo coligó las determinaciones de hechos con la prueba que tuvo ante sí. También, el organismo administrativo actuó correctamente en ordenar el reembolso de la cuantía de $14, 619.50. Empero, revocamos parcialmente la *Resolución* recurrida a los únicos fines de que la Compañía de Turismo consigne la valorización de los daños y perjuicios que la parte recurrente le ocasionó al recurrido conforme la normativa antes expuesta. Ante ello, devolvemos el caso ante el organismo administrativo para que continue los procesos conforme lo aquí resuelto.

**IV.**

Por los fundamentos que anteceden, confirmamos en parte, la *Resolución* recurrida y devolvemos el caso ante la Compañía de Turismo para que evalúe la cuantía correspondiente a los daños

ocasionados al señor Flores Acuña, revocando así la partida de los $10,000.00 por los daños.

Notifíquese.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones